**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL BERTOLINO, | ) | |
| | ) | Civil Action No. 14 - 720 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | |
| CONTROLS LINK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**
**ON DEFENDANT'S PARTIAL MOTION TO DISMISS**

**I. Summation**

      For the reasons set forth below, Defendant's Partial Motion to Dismiss (ECF No. 12) in this employment case bringing claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as amended 29 U.S.C. § 216(b) ("FLSA") and the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. Ann. §§ 260.1-260.45 ("WPCL") will be denied.  As this Court's reading of the case of Braun v. Wal-Mart Stores, Inc., 24 A.3d 875 (Pa. Super. 2011) and other related cases makes quite clear, Plaintiff has stated a claim – on Defendant's contractual obligation to pay wages - under the WPCL.  Plaintiff may, at this stage of the litigation, maintain a claim for punitive damages in light of the allegations of Defendant's systematic falsification of employee time records to evade its duties to Plaintiff under Federal and/or State law, the evidence of which will entail the same factual discovery as Plaintiff's other claims – which may proceed.

## II.  Factual and Procedural History

Plaintiff alleges the following facts in his August 18, 2014 Amended Complaint (ECF No. 11), which the Court accepts as true for purposes of the Partial Motion to Dismiss:

Michael Bertolino ("Plaintiff") was employed by Controls Link, Inc. ("Defendant") as a controls engineer in a part-time position from December 2005 until May 2009 and full-time from May 2009 until August 2013.   Upon transitioning from part-time to full-time employment, Defendant assigned Plaintiff an annual payment amount.  Defendant also specified several conditions for employment, including that Plaintiff would complete timesheets and work a minimum of 45 hours per week.

In February, 2013, Plaintiff was provided, and instructed to sign, an Employee Handbook.  See Amended Complaint, Exs. 1 & 2 (ECF 11-1, 11-2).  The Employee Handbook set forth Defendant's policies and procedures governing aspects of Plaintiff's at-will employment compensation and benefits.

Defendant calculated Plaintiff's hourly wage by dividing Plaintiff's annual wage by 52, then by 40.  As a full-time employee, Plaintiff consistently worked more than 40 hours per week, and was at times required to work 50-60 hours per week; he was not compensated for additional hours.  If Plaintiff worked more than 45 hours per week, Defendant falsified his timesheet to reflect 45 hours.[1]  If Plaintiff worked less than 45 hours per week, Defendant reduced his pay by one hour for every hour less than 45.  In one instance, when Defendant was requiring a 50 hour work week, Plaintiff's pay was docked for every hour less than 50. Defendant docked Plaintiff's pay for multiple other reasons, including voluntary or involuntary vacation days that reduced

---

[1] Cf. Employee Handbook (ECF 11-2) at 6 (Payroll Timesheets – "All non-exempt employees are required to maintain and submit payroll timesheets that accurately reflect all hours worked.").

Plaintiff's weekly hours below 45 hours per week. Defendant also reduced Plaintiff's pay by one hour for every hour that Plaintiff took off for personal or medical reasons.

From May, 2009 until his termination in August, 2013, Plaintiff issued repeated verbal and written complaints to Defendant (including to his supervisors) regarding falsifications of his timesheets and the lack of overtime pay. Defendant refused all requests for correct timesheets or overtime compensation[2] and threatened to terminate Plaintiff if his complaints persisted.[3] In August, 2013, Plaintiff refused to perform specific additional work without additional compensation and Defendant terminated Plaintiff's employment a week later, on August 30, 2013.

On June 4, 2014, Plaintiff filed his initial Complaint in this action (ECF No. 1) alleging violations of the FLSA, the Pennsylvania Minimum Wage Act of 1968 as amended ("PMWA"), 43 P.S. §§ 333.101-333.115, and the WPCL. In addition, Plaintiff brought claims for wrongful discharge and unjust enrichment under Pennsylvania common law. In response to a prior Partial Motion to Dismiss (ECF No. 9) Plaintiff's Amended Complaint is now limited to the following allegations:

Counts I and II -  Defendant (a) failed to timely pay statutorily-required overtime for work in excess of forty (40) hours per week, and (b) retaliated against Plaintiff for making complaints regarding falsification of his timesheets and failure to pay overtime compensation, in violation of the FLSA – *i.e.*, Plaintiff asserts – through allegations not yet addressed by

---

[2] See, *e.g.*, Amended Complaint at para. 34 (quoting email response from Plaintiff's project manager regarding his "correct[ion]" of Plaintiff's timesheets because "any time we work beyond billable hours, we work because we are professionals").

[3] See, *e.g.*, Amended Complaint at para 36 (attesting that the Project Manager reminded Plaintiff, in a January, 2013 meeting, that he was an at-will employee, and if he objected to timesheet modifications, "there [was] the door").

Defendant and as to which no discovery has yet been undertaken – that his employment compensation was subject to the provisions of the FLSA, that he was in fact a non-exempt employee. Cf. Brief in Support of Plaintiff's Reply at 2; compare Employee Handbook (ECF 11-2) at p. 4 (Working Hours – including "engineers" in the category of exempt employees "expected to maintain a minimum of 45 billable hours per week (or more, depending on management's expectation)"); id. at 6 ("Exempt employees are excluded not entitled to overtime compensation."); id. at 7 (similarly).

Count III – A contract between Plaintiff and Defendant was formed by both (a) Plaintiff's performance, as a full-time employee, of services for Defendant in exchange for the payment of wages; and (b) the Employee Handbook accepted by Plaintiff's signing on February 8, 2013. See Amended Complaint at paras. 58-64. Plaintiff worked for more hours than he was paid, and did not receive timely compensation or overtime compensation, owing to conduct by Defendant that was both willful and not in good faith, *i.e.*, in violation of the WPCL.

The Request for Relief includes a request for punitive damages. See Amended Complaint at p. 10.

Defendant's Partial Motion to Dismiss (ECF No. 12) seeks dismissal of Count III on the basis of the absence of "a written employment contract" between the parties, which it purports to be a "necessary prerequisite" to a claim under the WPCL. It also seeks dismissal of Plaintiff's request for punitive damages on the basis that Plaintiff has failed to allege facts sufficient to establish the requisite conduct. See Defendant's Brief in Support of Partial Motion to Dismiss Amended Complaint ("Brief in Support") at 2.

## III.  Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007); Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal

> evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).[4]

## IV. Analysis

### (A) Count III – WPCL

As Defendant correctly observes, the WPCL "does not create a statutory right to compensation. Rather, it provides a statutory remedy when the employer breaches a **contractual right** to earned wages." Brief in Support at 3 (quoting Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 957 (Pa. Super. 2011)) (emphasis Defendant's). See also id. (quoting De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003) (noting that WPCL "provides a

---

[4] The Court of Appeals for the Third Circuit had previously set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See* Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. Aug. 18, 2009).

statutory remedy when the employer breaches a contractual obligation to pay earned wages")).

As Defendant further correctly observes, a contract between the employer and the employee is a

prerequisite for relief under the WCPL. Id. It does *not*, however, follow that a "written

employment contract" between the parties is a "necessary prerequisite" to a claim under the

WPCL. Compare Brief in Support at 2. Indeed, the law is patently to the contrary.

Defendant's assertions - that (a) Plaintiff now rests Controls Link's contractual payment

obligations solely on the Employee Handbook (the "Handbook"), and (b) the express disclaimer

on page 1 of the Handbook precludes its creation of a binding contract between the parties - both

go astray. As to the former, which is contra-factual, the Court notes its summation of the

allegations of the Amended Complaint, *supra*. As to the latter, which is contrary to the law, the

Court observes the language of the disclaimer:

> I understand and agree that this Employee Handbook is not to be
> construed as an employment contract of any kind. I further understand and agree
> that my employment with Controls Link, Inc. is at-will, which means that either
> Controls Link, Inc. or I may terminate my employment at any time for any reason,
> with or without notice.

See Employee Handbook (ECF No. 11-2).

This language may be reasonably construed to reflect both parties' acknowledgment that

there existed no employment relationship other than an "at-will" form of employment, *e.g.*, that

there existed no promise/obligation of an employment for any term, or requiring cause or notice

for termination. Cf. Brief in Support at 5 (asserting that Plaintiff "expressly agreed that he had

no contractual relationship" with Defendant and "[*i*]*nstead*, the Plaintiff [was] simply an at-will

employee") (emphasis added). It may *not* be reasonably construed to disclaim either (a) the fact

of Plaintiff's employment, *i.e.*, to render Plaintiff a "volunteer" rather than an "employee" who

performed services for Defendant for compensation;[5] or (b) the other terms/obligations undertaken by Defendant (previously and in the Employee Handbook) for work performed by Plaintiff (which Defendant was, as by the Handbook's terms, free to modify prospectively, but which Defendant was *not* free to modify retroactively as to completed work). As an employee performing work for hire, Plaintiff's Count III compensation-related claim sounds in contract (a fact unaltered by the at-will nature of his employment). He has alleged both (a) a prior meeting of the minds on the terms of his at-will employment and work performed, and (b) a subsequent Employee Handbook reflecting his at-will employment terms. Defendant's non-payment of Plaintiff's alleged contractually- obligated compensation thus falls within the WPCL.

The Pennsylvania Superior Court has recently canvassed and articulately addressed the applicable law in Braun v. Wal-Mart Stores, Inc., 24 A.3d 875 (Pa. Super. 2011). More particularly, it expressly observed – with full discussion of the supporting law - that (a) it is axiomatic that a contract may be manifested orally, in writing, or as an inference (*i.e.*, one "implied-in-fact") from the relationship between and the conduct of the parties; (b) in general, there is an implication of a promise to pay for useful services rendered with the knowledge and approval of the recipient, in the absence of a showing to the contrary;[6] (c) the "communication to employees of rights, policies and procedures" in an employee handbook may (as in Braun, where said handbook containing employer's policies was disseminated and signed for by employees) constitute a unilateral contract with those terms, which the employee accepts by the continuing

---

[5] See *supra* (disclaimer quote, referring to Plaintiff's "employment with" Defendant).

[6] See id. at 942-943 (providing case citations); id. at 943 ("Implied-in-fact contracts are formed by conditions manifested by words and inferred from circumstances, thus entailing consideration of factors such as oral representations, employee manuals, and party conduct.").

performance of his duties;[7] (d) while an employer may permissibly discharge an at-will employee at any time, the at-will doctrine does not relieve the employer of its contractual obligation to provide the compensation promised in return for the employee's services;[8] (e) the

---

[7] The employer's handbook contained an acknowledgment page stating that the "policies and benefits presented . . . are for your information only and do not constitute terms or conditions of employment . . . . *This handbook is not a contract*." Braun, 24 A.3d at 883 (emphasis added). Compare Defendant's Reply Brief at 2 (asserting that Braun "is not applicable to the instant case" because the disclaimer did not contain the identical language that the handbook "was not to be construed as an employment contract of any kind"). The handbook also specified the employer's freedom to "from time to time" modify, supplement or delete policies or programs in the handbook "to better meet the requirements" of the company. Id. at 929. The employees' expert testified that a reasonable employee would have understood the uniform disclaimer to disclaim only the intent to form anything other than an "at will" employment, and not to disclaim the offered, specified benefits. Id. at 886-887. The Superior Court concluded that "an employee handbook [could *and did*] create a contractual relationship [as to the employment terms therein] while not supplanting the at-will employer-employee relationship" and "a reasonable person [in the at-will employee's situation] would understand that his continued performance would bear the fruits of his employer's policies." Id. at 940. Cf. id. at 943 (observing that "under Pennsylvania law, the existence of a disclaimer expressly disavowing any intent to contract [is] sufficient to retain the at-will presumption").

[8] Defendant correctly observes that the Bauer Court was "persuaded by the reasoning" in Caucci v. Prison Health Servs., Inc., 153 F.Supp.2d 605 (E.D. Pa. 2001) but misconstrues and/or fails to fully follow the Court's explication of Caucci. See Bauer, 24 A.3d a 941. A full summation of the Caucci Court's relevant holding, as quoted in Bauer, is that "[n]otwithstanding" that "[g]enerally, explicit disclaimers of contract formation in an employee handbook preclude a breach of contract claim", the "provisions in a handbook" communicating "certain rights, policies and procedures" may constitute a unilateral contract where the employee has accepted the "offer of an employment contract with those terms" by "continuing to perform the duties of his . . . job" and "[t]hus, the provisions comprising the unilateral contract may be viewed as a contract incidental to or collateral to at-will employment." Id. (quoting Caucci, 153 F.Supp.2d at 611). See also id. (citing for same holding, Pilkington v. CGU Ins. Co., 2000 WL 33159253 at *6-7 (E.D. Pa. Feb. 9, 2001)). Compare Defendant's Reply Brief at 3 (omitting acknowledgment of the entire "notwithstanding" section of Bauer's analysis).

   The essence and rationale of the law in this area was similarly well-stated by our sister Court for the District of New Jersey which held, in applying Pennsylvania law, that (a) while a compensation plan did not alter the plaintiffs' undisputed status as at-will employees, such status did not the employer from providing compensation for services rendered prior to their termination; (b) at-will employment confers a legal status "which addresses a particular aspect of the employment relationship", but that doctrine does not "address other aspects of the employment arrangement, such as issues regarding the promised form and amount of

Court has a mandate to construe the WPCL liberally; and (f) an employee raising a WPCL claim must establish, at a minimum, an implied oral contract with the employer.[9]  See also, generally Brief in Support of Plaintiff's Reply.

**(B) Request for Punitive Damages**

Defendant contends that Plaintiff has "not pled any facts sufficient to prove that [Defendant's] alleged conduct was willful, wanton or reckless, which is required for an award of punitive damages."  Brief in Support at 5.[10]  Plaintiff has alleged that Defendant systematically falsified his employment/time records to evade payment obligations to him under Federal and/or State law.  Therefore, the Court will not conclude at this stage that the allegations do not raise a "right to relief above the speculative level" or a "reasonable expectation that discovery will reveal evidence of the necessary element."  Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014) (quotations *supra*).  The Court further observes that the case will go forward, and the same discovery will be relevant, and the same facts will be in evidence as to Plaintiff's underlying claims and his requests for relief.   Defendant remains free to re-raise Plaintiff's potential entitlement to punitive damages at a later time.

---

compensation for work completed"; and (c) a compensation plan's disclaimer may reserve the right to alter terms for future services but cannot and does not permit the employer to retroactively modify terms for work previously performed.  See Bauer, 24 A.3d at 941-42 (quoting McGough v. Broadwing Commc'ns, Inc., 177 F.Supp.2d 289 (D.N.J. 2001)).

[9] See id. at 954 (noting Court of Appeals for the Third Circuit's observation in De Asencio, 342 F.3d at 309).

[10]  See also id. at 5-6 ("Punitive damages may be awarded for conduct that is outrageous because of the defendant's evil motive or his reckless indifference to the rights of others.  Punitive damages may be based on conduct which is malicious, wanton, reckless, willful or oppressive.") (quoting Feld v. Merriam, 485 A.2d 742, 747-48 (Pa. 1984)).  Defendant provides no authority for its further assertion that claims under the FSLA do not allow the fact finder to award punitive damages against the employer.

## V. **Order**

**AND NOW**, this 14th day of October, 2014:

**IT IS HEREBY ORDERED** that the Defendant's Partial Motion to Dismiss **is**

**DENIED**.

By the Court:

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc:  Counsel of record